ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **MARÍA DE LOURDES HERNÁNDEZ BURGOS**<br><br>Recurrido<br><br>v.<br><br>**HERIBERTO MELÉNDEZ VARGAS h/n/c EK TILE & CABINETRY**<br><br>Recurrente | TA2025RA00282 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor (DACO)<br><br>Caso Núm: **PON-2019-0001821**<br><br>Sobre: Contrato de Obras y Servicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece Heriberto Meléndez Vargas, h/n/c EK Tile & Cabinetry (Meléndez Vargas, EK Tile o parte recurrente) y solicita la revisión de la *Resolución* emitida el 15 de agosto de 2025, por el Departamento de Asuntos del Consumidor (DACo). Mediante la misma, la agencia declaró *ha lugar* la querella presentada por la señora María de Lourdes Hernández Burgos (señora Hernández Burgos o parte recurrida) contra la parte recurrente.

Por las razones que expondremos a continuación, se confirma la determinación recurrida.

**I.**

Según surge del expediente, el 28 de enero de 2019, la señora Hernández Burgos y el señor Meléndez Vargas (contratista) suscribieron un *Contrato de Ejecución de Obra*, mediante el cual se pactó la construcción de una casa por el precio ajustado de $63,680.00. Las partes acordaron que la obra se realizaría en cuatro etapas: en la primera se le pagaría al contratista una suma inicial de $28,000.00 al momento de firmar el contrato; en la segunda se

le pagaría al contratista $11,000.00; en la tercera otra suma de $11,000.00 y en la cuarta se le desembolsaría al contratista $13,680.00.

En agosto dev2019, la señora Hernández Burgos instó una querella (PON-2019-0001824) contra el señor Meléndez Vargas, h/n/c EK Tile & Cabinetry, al amparo de la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*[1]. En esencia, alegó que los querellados incumplieron con dos etapas de construcción que fueron pagadas. Añadió que el contratista requirió el pago de etapas que no culminó; que en varias ocasiones se llevó a los empleados para otros proyectos; que removió material del proyecto sin notificación alguna y que le debía dinero.

Tras varios trámites, se llevó a cabo la vista administrativa el 28 de agosto de 2023, 28 de noviembre de 2023, 15 de febrero de 2024 y 18 de marzo de 2024. Durante la misma testificaron: la señora Hernández Burgos, el ingeniero Félix L. Rivera Arroyo (perito) y el señor Meléndez Vargas.

Así las cosas, el 15 de agosto de 2025, el ente administrativo dictó la *Resolución* que hoy revisamos, la cual incluyó las siguientes determinaciones de hechos:

1. La Sra. María de Lourdes Hernández Burgos, (en adelante la querellante) es propietaria de una vivienda en el Barrio Rio Cañas Abajo, Calle 1# 47-A en Juana Díaz PR y ante daños sufridos por el paso del Huracán María, contrató al Sr. Heriberto Meléndez Vargas para que le construyera una nueva vivienda. Y de las cotizaciones que tuvo ante sí, escogió al señor Heriberto Meléndez Vargas para la construcción de una nueva vivienda.

2. El señor Heriberto Meléndez Vargas se dedica al negocio de construcción de obras tipo comercial y residencial y fue contratado por la querellante para realizar un trabajo que consistía en demoler una vivienda existente que sufrió daños por el paso del huracán María y construir una nueva edificación con el plano que le fue entregado por la querellante.

---

[1] 3 LPRA sec. 341, *et seq.*

3. La parte querellada Heriberto Meléndez Vargas realiza trabajos de construcción con el nombre EK TILE & CABINETRY con dirección en Colinas del Prado en Juana Diaz Puerto Rico y al momento de la presentación de querella, éste no estaba registrado como contratista independiente conforme al Reglamento Núm. 8172 del 19 de marzo de 2012, Reglamento para el Registro de Contratistas. Según declarado por el querellado ya para julio 2019 estaba registrado como comerciante, pero DACO no le había entregado la licencia de contratista y estaba en ese proceso cuando hizo este contrato con la querellante y que la querellante no le exigió estar registrado en DACO.

4. El 28 de enero de 2019 la querellante y el Sr. Heriberto Meléndez Vargas suscribieron un contrato, ante Notario, denominado CONTRATO DE EJECUCION DE OBRA mediante el cual el querellado se obligó a construir, según el plano provisto por la querellante, una casa sobre columnas con un cuarto master con closet y baño 24'x 18'con techo en cemento. Además, en la estructura existente: un cuarto dormitorio, sala, cocina, comedor, laundry con conversión a ½ baño, balcón así como escalera exterior en la parte posterior de la vivienda. El techo de la parte existente de la estructura será en galvalum y madera.

5. El precio convenido fue de $63,680.00 incluye mano de obra y materiales de construcción; serán pagados por la querellante según se completen las etapas. La construcción incluye instalación eléctrica y de plomería certificadas; así como los trabajos de pintura del interior y exterior con pintura marca Sherwin Williams.

6. Término pactado para la construcción de la obra: no mayor de 90 días calendarios, salvo que advengan situaciones de caso fortuito o fuerza mayor en cuyo caso las partes acordaran el termino adicional razonable a concederse. Así acuerda que por cada día de lluvia se concederán dos días adicionales para completar la obra. El término de 90 días iniciará el martes 29 de enero de 2019. La construcción debía terminar en abril 2019.

7. Surge de la Cláusula OCHO, del referido CONTRATO DE EJECUCION DE OBRA, que se pagará al Contratista un pago inicial de $28,000.00 al momento de firmar el contrato para la compra del 80% de los materiales. 1ra. Etapa Incluye: Bloque, varilla, alambres, concreto ventanas, puerta, loza, madera para molde y techo intermedio, madera tratada para área de 24 x 24, garvalum, alquiler de equipo, excavación, zapatas, pisos, bases de columnas, techo intermedio, escalera trasera, drenaje en pared exterior lateral lado derecho. 2da Etapa se pagará $11,000.00 una vez finalizada la demolición, estructura de madera, subir paredes en bloques, columnas y vigas a la estructura nueva y existente. 3ra Etapa se pagará $11,000.00 una vez finalizada la construcción del techo de concreto y empañetado, techo de madera y garvalum; instalación de ventanas y empañetado de toda la estructura. 4ta

Etapa se pagará $13,680.00 una vez finalizados los trabajos de terminaciones, pintura, instalación de lozas, closets, puertas.

8. La querellante pagó al querellado: $28,000.00 para la compra de materiales (1/28/2019) Se mostró copia del cheque y del estado de cuenta en que consta que el querellado lo cambió. También la querellante pagó al querellado $11,000.00 correspondiente a la Etapa 2. Esta etapa 2 quedó inconclusa- Declarado por la querellante

9. El 9 de agosto de 2019 el DACO notificó de la querella que presentó la Sra. María De Lourdes Hernández Burgos al querellado contratista, Heriberto Meléndez Vargas. La querella expone la construcción de una casa para ser terminada el 30 de abril de 2019 (4/30/2019). Se expone que el contratista no ha cumplido con las etapas del contrato, aunque se le ha pagado (etapa 1 y 2); que se incurrió en gastos de materiales para que pudiera seguir la obra en la cantidad de $14,055.99. Que el contratista debe dinero e insiste en que se le paguen etapas no terminadas; que en varias veces el personal laboral ha sido removido para otros proyectos, y otras veces estando en el lugar no ha realizado trabajo; Que el querellado removió material del proyecto sin notificación a la querellante; Que la querellante ha tenido que estar presente en el proyecto casi todos los días por la inquietud de que se lleven material sin autorización. Se solicitó que se complete las etapas; que se pague por los materiales pagados por la querellante; que se penalice por la tardanza $300 diarios.

10. Como trabajos pendientes, la querellante señaló en querella las siguientes etapas. ETAPA 1 PRIMERA FASE: ventana (compra) puerta (compra) – escalera trasera - drenaje en pared lateral exterior (lado derecho). SEGUNDA FASE: vigas en la estructura nueva y en la existente; falta una línea de bloques. TERCERA FASE: construcción del techo de concreto, empañetado, techo de madera y garvalum, instalación de madera y de ventanas, empañetado de toda la estructura CUARTA FASE: pintura, instalación de losetas closets puertas y gabinetes.

11. La TERCERA y la CUARTE FASE, NO SE CONCLUYO.

12. La querellante declaró que autorizó el cambio que le requirió el querellado de 3 columnas a que hiciera 4 columnas (cada columna $774.00). Se cobró y se pagó $2,936.00

13. La querellante declaró que pagó $2,270.00 para el piso de marquesina que se hizo entre la primera y segunda etapa (fase).

14. Durante el periodo de 17 febrero a 24 marzo de 2019 la querellante estuvo fuera de P.R.

15. La querellante declaró que para del 14 de junio de 2019, el querellado se marchó, no sabe por qué, llamó a la

señora Daisy Padilla, al querellado varias veces y no respondió, entonces presentó querella en DACO. La última vez que trabajó el querellado fue el 31 de mayo de 2019. Entonces la querellante buscó otro contratista para terminar la obra, contrató a TERRA VERDE LLC, estos terminaron la construcción. La querellante contrató con estos por $53,218.02. y según declarado por la querellante mientras tanto vivió en una casa prestada y también estuvo un tiempo viviendo en la casa de su madre.

16. SE ESTIPULÓ en vista administrativa las cantidades: $38,010.00 cheques del proyecto según el contrato; $11,386.00 cheques por cambios de orden. TOTAL pagado por QUERELLANTE: $49,396.00.

17. SE ESTIPULÓ en vista administrativa la cantidad de $24,680.00 pagado por QUERELLANTE para materiales, equipo. Cantidad usada en la casa, que están en la casa- declarado por querellante.

18. SE ESTIPULÓ en vista administrativa la cantidad de $13,128.03 pagado por el QUERELLADO para herramientas, equipo, materiales.

19. Como parte del proceso administrativo se realizó inspección programada por DACO el 6 de diciembre de 2019. El 4 de agosto de 2021, se notificó informe técnico preparado por el investigador de querellas de construcción del DACO, Sr. Luis D. De Jesús González. Las partes no objetaron al informe.

20. HALLAZGOS DE INSPECCION: La parte querellante contrató los servicios de Heriberto Meléndez Vargas para que este realizara la construcción de su residencia. El trabajo consistía en la demolición de una residencia existente que sufrió daños por el paso del huracán María, para dar espacio a la nueva edificación. Hasta la fecha los trabajos no han sido completados. Se realizó una inspección sobre los trabajos realizados por el querellado, en la misma se observó lo siguiente: La construcción de la residencia se encuentra detenida. La residencia, la cual contiene una habitación y un baño está siendo construida en una segunda planta. Al momento de la inspección, las paredes de bloques y columnas están levantadas. Se ha realizado la instalación parcial de la tubería pluvial y sanitaria, así como la tubería para el cableado para el servicio eléctrico en la residencia. Además, se realizó el depósito de hormigón para el topping de la losa de piso en el área de la habitación, baño y closet. Se comenzaron los trabajos para la instalación del falo para la construcción del techo de la residencia. Falta por completar una escalera en la parte posterior de la residencia, aplicación parcial para topping para el piso, empañetado de paredes y columnas, instalación de losas de cerámica, completar enchapado e instalación de accesorios del baño, puertas y ventanas, trabajos eléctricos, gabinetes de cocina y la construcción del techo.

21. En expediente administrativo consta documento Análisis de Costos Construcción lo que es referente a los trabajos por realizar para finalizar la construcción; preparado por Ing. Israel Torres y el cual desglosa mano de obra y materiales por un total de $40,820.00.

22. En relación al plano para la construcción de la casa, se le entregó al querellado un solo set de Planos, realizado por persona de nombre Jackeline Martínez quien posee título en ingeniería y esta lo lleva ante el señor Olmeda. Jackeline Martínez fue quien le recomendó a la querellante al señor Heriberto Meléndez (querellado), ésta inspeccionaba los trabajos, le estaba ayudando, era sin contrato. Declaración de la querellante.

23. En relación al perito presentado por la querellante, el ingeniero Félix L Rivera Arroyo, luego de expuesto todas sus credenciales, experiencia laboral fue aceptado como perito de la parte querellante. (ingeniero civil - estructural-forense-inspector de proyectos comerciales, consultor estructural con maestría en ingeniería con más de 45 años de experiencia en diseño, inspección y construcción.

24. De lo declarado por el ingeniero Félix L Rivera Arroyo, éste consideró que la querellante pagó en exceso al querellado: $39,817.34. y en referencia a los trabajos realizados por el contratista, conforme a la tabla de agosto 2019 del Ing. Israel Torres Colón, son por $35,249.25.

25. El señor Heriberto Meléndez Vargas (parte querellada) en su declaración expresó que la ingeniera Jackeline Martínez le refirió a la querellante; que conoce a la ingeniera Jackeline Martinez por trabajos que hizo para ésta.

26. El señor Heriberto Meléndez Vargas (parte querellada) en su declaración expresó que dejó de trabajarle a la querellante por incumplimiento en los pagos; porque no le dieron la orden de cambio para la viga de acero en Etapa 3; que la querellante el entregó el plano y se lo llevó para estudiarlo; que le señaló error en el plano y la querellante le dijo que se reuniera con la ingeniera; que la ingeniera le indicó que el plano estaba bien, que no lo cambiaría y que él quería corregir una de las columnas. Solo montó pared de bloque de cuarto de atrás (Etapa 3).

27. El querellado declaró que hacían orden de cambio verbal; que tenía que ajustar los cambios y que utilizaba el dinero que tenía y la ingeniera no hizo minuta de esos cambios. Que el primer pago por $28,000 el cheque demoró tres días; que se pasó de los $28,000 en nómina, materiales y alquileres. Que puso hasta 6 empleados a trabajar (en reunión con la ingeniera le dijo que metiera mucha gente) luego tuvo que reducir a 4 y a 3 empleados; y que pagaba cash a los empleados.

28. El querellado declaró que se hizo movimiento de terreno, excavaciones porque en las primeras columnas

hubo cambio y la ingeniera, para los cambios, no iba a las citas con él.

29. En cuanto al plano declaró el querellado que él le señaló error, que trató de que se corrigiera el error, que tuvo que romper el piso para una columna, tiró el piso, luego cerraron, y que un ingeniero que consiguió la querellante le dijo que se hiciera la columna donde va, entonces tuvieron que romper y hacer la columna otra vez y la viga de coronación, el dinero de esto lo pagó él, se perdió tiempo. (no se precisa cantidad)

30. El querellado declaró que se hizo la Etapa 1 y la Etapa 2; que se hicieron cambios de orden (balcón– escalera) y decidió detener la obra; que la ingeniera se supone le hiciera un plano de esa orden de cambio y no lo hizo; que se excavó con equipo pesado porque en las primeras columnas hubo cambio, se hizo columnas más grandes (pegadas a la casa); tuvieron que hacer moldes, tuvo que alquiler contenedor para guardar las cosas; hizo el baño que no estaba en el plano; no hizo el drenaje francés porque al cavar encontró un tubo eléctrico que viene del contador de afuera; pidió una orden de cambio que debe hacerla un electricista y la ingeniera , eso no se hizo.

31. El querellado declaró que se hizo la demolición la parte de arriba de la casa que era en madera, que subió paredes, moldeó el falso techo y tuvo que detener el trabajo en esa etapa.

El DACo concluyó que la labor a la que se obligó EK Tile, la cual era en etapas, no se realizó completamente, toda vez que la tercera y cuarta etapa no se construyó. Añadió que una primera y segunda etapa se realizó, pero quedaron trabajos pendientes de la segunda etapa. La agencia estableció que la señora Hernández Burgos concluyó el trabajo de construcción contratando a otro contratista, "TERRA VERDE LLC", quienes terminaron la construcción a un costo de $53,218.02. Asimismo, el DACo determinó que la obra debió haberse finalizado para abril de 2019, no obstante, al 14 de junio de 2019, EK Tile se marchó sin responder a la señora Hernández Burgos, dejando atrasados los trabajos. En esa misma línea, concluyó que EK Tile decidió no continuar con la construcción y no respondió a las llamadas de la señora Hernández Burgos.

Por igual, la agencia determinó que:

No cabe duda en este caso que hubo un incumplimiento por parte del querellado y que lo que se debe establecer es qué cuantía corresponde en reembolso para la querellante. Así tenemos que se estipuló en la vista administrativa la cantidad de $49,396.00 pagado por la querellante ($38,010.00 cheques del proyecto según el contrato; $11,386.00 cheques por cambios de orden.) y se estipuló la cantidad de $24,680.00 pagado por QUERELLANTE para materiales, equipo. Por lo que sumada esas partidas nos da la cantidad de $74,076.00. Ahora bien, esta cantidad de $74, 076.00 que pago la querellante, menos la cantidad de lo que realizó el querellado ($35,249.25) nos da a $38,826.75. Y a estos $38,826.75 le restamos la cantidad estipulada de lo que el querellado pagó por equipo- por herramientas, materiales ($13,128.03) entonces la cantidad que el querellado tiene que devolver a la querellante es $25,698.72 dólares.

El DACo también impuso al señor Meléndez Vargas $900.00 en honorarios de abogado por temeridad, a tenor con la Regla 26.3 del Reglamento de Procedimiento Adjudicativos, aprobado el 18 de diciembre de 2000. En desacuerdo, este solicitó reconsideración, sin éxito.

Aun inconforme, el señor Meléndez Vargas h/n/c EK Tile acude ante nos y le señala al DACo la comisión de los siguientes errores:

ERROR I- Erró la Honorable Jueza al declarar CON LUGAR la querella presentada y ordenar al querellado-recurrente el pago de $25,698.72 a favor de la querellante-recurrida, a pesar de que dicha cantidad no está fundamentada en la prueba vertida durante las Vistas celebradas.

ERROR II- Erró la Honorable Jueza al considerar el Informe Preparado por el Ing. Israel Torres Colon, a pesar de este no estar disponible para ser contrainterrogado.

Mediante *Resolución* del 17 de octubre de 2025, concedimos a la parte recurrente cinco (5) días para informar si se proponía a presentar la transcripción de la prueba oral. Transcurrido el término provisto, la parte recurrente no informó lo solicitado, ni presentó la transcripción.

El 31 de octubre de 2025, la parte recurrida presentó su *Alegato en Oposición a Revisión Administrativa*. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A**.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE,* 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[2]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias

---

[2] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[3] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de

---

[3] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

En Puerto Rico existe el principio de la libertad de contratación. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169, 173 (2011). El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Artículos 1206-1207 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 3371-3372.[4] La validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. Art. 1208 del mencionado cuerpo legal, 31 LPRA sec. 3373.

Es de conocimiento que su perfeccionamiento se da por el mero consentimiento y desde ahí las partes están obligadas al cumplimiento de lo expresamente pactado y a todas sus consecuencias, siempre que éstas sean conformes a la buena fe, al

---

[4] Aplicable al caso de autos, toda vez que los hechos se suscitaron durante la vigencia del Código Civil de 1930, derogado por la Ley Núm. 55-2020, según enmendada, 33 LPRA sec. 5311 *et seq,* conocida como el Código Civil de Puerto Rico de 2020.

uso y a la ley. Artículo 1210 del Código Civil de Puerto Rico de 1930, 31 LPRA. sec. 3375. Un contrato es válido cuando convergen los siguientes tres (3) criterios; 1) consentimiento de los contratantes; 2) objeto cierto que sea materia del contrato, y 3) causa de la obligación que se establezca. Artículo 1213 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3391.

Es a partir del perfeccionamiento de un contrato, que las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Cuando un contrato es legal, válido y carente de vicios del consentimiento, constituye la ley entre las partes y debe cumplirse a tenor de éste. *Íd.*

En cuanto al incumplimiento contractual, definido como "el quebrantamiento de un deber que surge de un contrato expreso o implícito", de este producir daños a una de las partes contratantes, surge una causa de acción. *Sociedad Legal de Gananciales v. Vélez & Asoc.*, 145 DPR 508, 521 (1998). El Art. 1054 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3018, recalca que "[q]uedan sujetos a indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia, morosidad, y los que de cualquier modo contravinieren a tenor de aquellas". Si el incumplimiento de lo pactado es imputable a una de las partes, por esta haber obrado voluntariamente y con pleno conocimiento de su quebrantamiento, tal conducta constituye dolo contractual. Véase, *Ramos v. Orientalist Rattan Furnt., Inc.*, 130 DPR 712 (1992).

### III.

En su escrito, la parte recurrente hace constar su inconformidad con la decisión del DACo de declarar *ha lugar* la querella presentada por la parte recurrida.

En su primer señalamiento de error, la parte recurrente alega que, pactado el contrato de obra, se le entregó un plano preparado por la ingeniera Jackeline Martínez. Arguye que la intervención de la ingeniera estuvo plagada de incomparecencias y la negativa de enmendar el plano conforme a los cambios que se realizaban en la obra. A su vez, aduce que la *Resolución* del DACo indica de manera errónea y sin prueba documental que recibió la totalidad de los $11,000.00 pactados por la segunda etapa.

La parte recurrente añade que pactó junto a la parte recurrida, de forma verbal, que esta última adquiriría materiales de construcción para sufragar la mano de obra de los obreros semanalmente, lo cual, a su entender, constituyó una novación al contrato. Sostiene que los trabajos pactados por las partes sufrieron modificaciones que requirieron pagos adicionales por la parte recurrida, en un monto ascendente a $11,386.00. Así, argumenta que todos los pagos que recibió de la parte recurrida se utilizaron en la construcción concernida, por lo que no procedía estimar en $25,698.72 la cantidad a ser pagada por éste.

En su segundo señalamiento de error, la parte recurrente esboza que la parte recurrida presentó inicialmente el Análisis de Costos de Construcción preparado por el ingeniero Israel Torres Colón, perito que nunca compareció a la celebración de las vistas administrativas. Particulariza que, durante la vista final, la parte recurrida presentó un nuevo perito, el ingeniero Rivera Arroyo, quien rindió un nuevo informe basado en el realizado por el ingeniero Torres Colón. En ese sentido, hace hincapié en que objetó ante el DACo el contenido del documento del ingeniero Torres Colón, sin éxito, toda vez que la agencia admitió ambos informes, a pesar de que el ingeniero Torres Colón nunca pudo ser contrainterrogado.

Por otro lado, la parte recurrida está de acuerdo con la *Resolución* objetada. Es su parecer que la juzgadora de los hechos

realizó un análisis sosegado, exhaustivo y detallado de la prueba desfilada ante sí. Esgrime que, en la presente causa, no existe justificación para dejar sin efecto la decisión recurrida.

Analizado el expediente, concluimos que no incidió la agencia recurrida al pronunciar su dictamen y concluir que hubo un incumplimiento contractual por la parte recurrente. Tampoco incidió al imponer honorarios de abogados por temeridad ante la conducta manifestada por el señor Meléndez Vargas. De la *Resolución* recurrida se desprende que el DACo emitió su determinación basada en la prueba documental que obraba en el expediente del caso, así como en la credibilidad que le merecieran los testimonios vertidos en la vista administrativa.

En armonía con lo anterior, el récord del caso revela que el ingeniero Rivera Arroyo[5] fue contratado por la parte recurrida para observar e informar sobre los reclamos al contratista por trabajos pagados a la parte recurrente y no llevados a cabo. Según el *Informe de Reclamos a Contratista por Construcción No Completada*, preparado por el ingeniero Rivera Arroyo, su evaluación consistió principalmente de lo siguiente:

- Contrato entre la señora Hernández y el contratista Heriberto Meléndez Vargas.
- Pagos llevados a cabo al contratista.
- Tabla del Ing. Israel Torres donde indica los trabajos llevados a cabo.
- Varias entrevistas de los relatos y visita de observación, mediciones y recopilación de la información de la estructura y solar. Observaciones generales en el exterior e interior y sus alrededores y fotografías tomadas.

En su informe, el perito Rivera Arroyo reconoció los trabajos ejecutados, pagos y reclamos por trabajos no llevados a cabo según el contrato. Además, reconoció pagos llevados a cabo por la parte

---

[5] Rivera Arroyo tiene Bachillerato y Maestría en Ingeniería con más de 45 años de experiencia en diseño, inspección y construcción. Desde 1995 está certificado como Inspector de HUD, Especialista en Estructuras de FEMA, Gerencia de Proyectos y Construcción y es Oficial retirado de la Reserva del Ejército de Estados Unidos en Ingeniería.

recurrida para poder terminar los trabajos donde incluyen correcciones a los trabajos ya indicados como completados.

Cabe destacar que del escrito de la parte recurrente se desprenden razonamientos dirigidos mayormente a atacar la apreciación de la prueba de la Jueza Administrativa que presidió las vistas. No obstante, a pesar de habérsele concedido un término para informar si se proponía a reproducir la prueba oral que desfiló en la vista administrativa, la parte recurrente no la incluyó en su recurso. De forma que, no nos colocó en posición para revisar las determinaciones de hechos realizadas por el DACo.

En suma,  en ausencia de la referida prueba, y revisadas las conclusiones de derecho del DACo en todos sus aspectos, colegimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones